FILED

2023 Aug-17  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| AMANDA NICOLE BOICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:22-cv-151-GMB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On August 28, 2019, Plaintiff Amanda Nicole Boice filed applications for Supplemental Security Income Benefits ("SSI") and disability insurance benefits ("DIB") with an alleged disability onset date of October 1, 2014. On January 21, 2021, an administrative law judge ("ALJ") denied Boice's claim. Boice appealed the decision, and the Appeals Council granted the request for review. On December 9, 2021, the Appeals Council affirmed the ALJ's decision. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner").

Boice's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 15 at 1–2. Based on a review of the parties' submissions, the relevant law, and

the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "'if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion.'"

*Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A) & 416(i).   A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Boice bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).   The Commissioner must determine in sequence:

(1)   Is the claimant presently unable to engage in substantial gainful activity?
(2)   Are the claimant's impairments severe?
(3)   Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)   Is the claimant unable to perform her former occupation?
(5)   Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"'An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior

work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Boice was born in 1984, so she was 35 years old on her alleged onset date and 37 years old on the date of the ALJ's decision. R. 245.  In her disability report, Boice alleged that fibromyalgia, gastritis, depression, anxiety disorder, migraines, endometriosis, and an iron deficiency limit her ability to work. R. 260.  She completed high school and obtained a medical assistant certification. R. 261.  Boice previously worked as a bank teller, bookkeeper, dog groomer, lab technician, and retail service provider. R. 261–62.

The ALJ held a hearing in Boice's case on October 22, 2020. R. 37.  At the hearing, Boice testified that she suffered from depression, anxiety, panic attacks, painful menstrual cramping, and back pain. R. 44, 46, 48–49 & 57.  She previously had a hysterectomy and endometriosis surgery, which alleviated some of her pain. R. 57.  With her application for benefits, Boice submitted a Function Report where she indicated that she cared for her daughter, prepared daily meals, cleaned her home, drove herself, and shopped in stores and online. R. 282–85.  Boice also pays her bills and manages her finances and accounts, but she depends on her husband to care for their pets and her daughter's advanced needs. R. 283 & 285.

At the hearing, the ALJ received evidence from a Vocational Expert ("VE"), who offered the opinion that a hypothetical person with Boice's abilities could not return to her previous work as a bank teller, dog bather, bookkeeper, office manager, or laboratory technician. R. 61–63.  Based on this testimony, the ALJ found that Boice could not return to her prior employment. R. 30.

To support her claim, Boice submitted medical records from several medical providers, including Dr. William McDonald and Dr. John H. Lary. R. 1490–1505. On November 11, 2019, Dr. McDonald offered a positive evaluation of Boice's mental status and living situation. R. 1492–93.  He noted that Boice had normal speech, was well groomed, her recent and remote memory were intact, and her attention and concentration were not impaired. R. 1492.  Boice's prognosis was fair, and she reported that she spent most days getting her daughter prepared for school, doing household chores, and then preparing dinner. R. 1493.  According to Dr. McDonald, Boice lived with her parents but could manage her own basic self-care and live independently. R. 1492.  Dr. McDonald found Boice to be cooperative and reliable throughout the examination process. R. 1493.  At the conclusion of his report, Dr. McDonald offered these opinions of Boice:

> Her ability to understand, carryout, and remember short, simple instructions may be mildly impaired.  Her ability to maintain attention and concentration for [at] least two hours is at least mildly impaired.  Her ability to maintain a regular schedule with appropriate punctuality is seriously impaired.  Her ability to seek and accept appropriately instructions and criticism from supervisors is mildly

6

> impaired.  Her ability to maintain socially appropriate appearance
> and social interaction in the workplace may be mildly impaired.  She
> is capable of managing any financial benefit that she may receive.

R. 1493.  Dr. McDonald assessed Boice with a global assessment of functioning

("GAF") score of 60. R. 1493.

As to Dr. McDonald's opinion that Boice's ability to maintain a schedule was

seriously impaired, the ALJ found this assessment unpersuasive and inconsistent

with the medical record. R. 28.  The ALJ also found that Dr. McDonald's opinion of

Boice's GAF score was not persuasive because GAF scores are merely a subjective

reflection of the patient's presentation that day and can vary from one physician to

the next. R. 28.  In contrast, the ALJ found that Dr. McDonald's opinions about mild

impairments in Boice's abilities to remember short instructions and to accept

criticism were somewhat consistent with the record. R. 28.

The ALJ next assessed Dr. Lary's opinion.  Dr. Lary physically examined

Boice on November 15, 2019, when she appeared as well developed, healthy,

normal, and in no acute distress. R. 1496.  Her chest evaluation was normal, her

lungs were clear, and her breathing was grossly normal. R. 1497.  Her abdomen had

no masses, tenderness, or enlargements, and her back muscles appeared normal.

R. 1497.  Boice could flex her upper body 65 degrees at her waist and hyperextend

by five degrees. R. 1497.  Her straight leg raise was normal, and her extremities had

no clubbing, edema, swelling, tenderness, or enlargements. R. 1497.  Boice was able

to make a good fist with both hands, touch the tip of her thumb to all fingers, and had normal grip strength. R. 1497.  She walked normally and could balance while her eyes were closed without assistance. R. 1498.  However, at the conclusion of the assessment, Dr. Lary opined that Boice's abilities to "sit, stand, walk, lift, carry, and bend . . . squat, kneel, and reach repetitively" were impaired by fibromyalgia pain. R. 1498.

The ALJ found Dr. Lary's opinion to be unpersuasive for a number of reasons. R. 29.  In sum, Dr. Lary did not "clearly state how long he assessed the claimant could perform these tasks during an eight-hour workday," only examined Boice once, and "based his opinion on the claimant's complaints of pain, rather [than on] his own normal clinical findings including a normal gait, normal motor strengths, intact sensation, normal grip strength, and no enlarged, swollen, red, warm, tender, or deformed joints." R. 29.

Psychological consultants Dr. Kirstin J. Bailey and Dr. Robert Estock also evaluated Boice. R. 81–83 & 105–107.  In their largely identical residual functional capacity ("RFC") assessments, both Dr. Bailey and Dr. Estock opined that Boice

> should be able to concentrate and attend to simple (but not detailed) tasks for extended periods and will need all customary rest and breaks.  [She] would benefit from a flexible schedule as 1-2 days of work a month may be missed due to depression and anxiety.  [Boice] should be able to complete an ordinary routine without additional supervision.  [She] would function best in her own work station without close proximity to other in order to minimize anxiety, frustration, & distraction.  [Boice] would benefit from a familiar

work routine but should avoid excessive work loads, quick decision making, and multiple demands.

R. 82 & 106.  Dr. Bailey and Dr. Estock also reported that "changes in work setting should be presented gradually and infrequently to give time for adjustment," her "interaction with the public should be non-intensive," and "[f]eedback and criticism should be given in a non-confrontational and supportive manner." R. 82–83 & 107.

The ALJ found that various portions of Dr. Bailey's and Dr. Estock's opinions were not entirely consistent with the medical record. R. 28–29.  In reaching that conclusion, the ALJ also took issue with some of the terminology the doctors used, noting that phrases such as "extended periods," and "gradually" were too indefinite, while "would benefit," "would function best," and "be expected to miss" were imprecise, conclusory, or not defined by the Dictionary of Occupational Titles or the Social Security Regulations. R. 29.

Applying the sequential evaluation process, the ALJ found that Boice did not engage in substantial gainful activity through December 31, 2020. R. 20.  At step two, he found that Boice suffered from the severe impairments of anxiety, depression, and degenerative changes in the right knee. R. 20.  The ALJ determined that these medically determinable impairments significantly limited Boice's ability to perform basic work activities. R. 20.  At step three, the ALJ found that Boice did not have an impairment or combination of impairments meeting or medically equal to the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1. R. 20.

Before proceeding to step four, the ALJ determined that Boice had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> Occasionally lift and/or carry, including upward pulling of twenty pounds, and can frequently lift and/or carry including upward pulling of ten pounds.  The claimant can sit for six-hours in an eight-hour workday with normal breaks, and stand and/or walk with normal breaks for six-hours in an eight-hour workday.  The claimant's ability to push and/or pull, including operation of hand or foot controls is unlimited up to the lift and carry restrictions of twenty and ten pounds.  The claimant can occasionally climb ramps and stairs, balance, stoop, occasionally kneel, crouch and crawl.  No work at ladders, ropes or scaffolds, unprotected heights or around dangerous machinery.  The claimant can understand, remember, and carryout short simple instructions, and can concentrate and remain on task for two hour periods across an eight hour workday, five day workweek with all customary work breaks.  The claimant can have occasional contact with the general-public, coworkers, and supervisors.  Any changes in the work environment should be infrequent.

R. 23.  The ALJ relied on the VE's testimony to find that a person with Boice's limitations could not perform her past work. R. 30.  At the fourth step, the ALJ considered Boice's age, education, work experience, and RFC in determining that there are jobs that exist in significant numbers in the national economy that she can perform, including work as a shirt folder, garment sorter, and cuff folder. R. 31. Therefore, at step five of the five-step sequential process, the ALJ found that Boice was not disabled within the meaning of the Social Security Act at any time from October 1, 2014, the alleged onset date, through December 31, 2019, the date last

insured. R. 31.

## IV.  DISCUSSION

On appeal, Boice presents one issue for review: that substantial evidence does not support the ALJ's RFC determination because he improperly evaluated her physicians' opinions. Doc. 20 at 3.  Within her discussion of this issue, Boice focuses on the ALJ's consideration of the supportability and consistency factors in evaluating Dr. McDonald's, Dr. Lary's, Dr. Bailey's, and Dr. Estock's opinions, and on Dr. McDonald's assessment of her GAF score. Doc. 20 at 8–28.   The Commissioner contends that the ALJ specifically addressed the GAF score and properly evaluated the supportability and consistency factors of each opinion. Doc. 21 at 5–23.  Although Boice formally presents only one issue for review, the court first addresses her challenges to the RFC and GAF determinations, and then her supportability and consistency claims.   Ultimately, the court finds that substantial evidence supports the ALJ's opinion and that he applied the proper standards to reach his conclusions.

### A.    RFC Determination and GAF Score

When assessing a claimant's RFC, Social Security Ruling 96-8p dictates that the ALJ first must determine the claimant's functional limitations and then address her ability to work on a function-by-function basis, pursuant to the functions described in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945.

SSR 96-8p, 1996 WL 374184, at *1.  The RFC "is not the least an individual can do despite . . . her limitations or restrictions, but the most." *Id*.  The regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id*. at 7.  Additionally, in cases where symptoms are alleged, the assessment of a claimant's RFC must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence"; "[i]nclude a resolution of any inconsistencies in the evidence as a whole; and set forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id*.  The RFC assessment "must be based on all of the relevant evidence in the case record, such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, evidence from attempts to work, need for a structured living environment, and work evaluations, if available." *Id*. at 5.

It is the ALJ's exclusive responsibility to assess the claimant's RFC. *Moore v. Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016).  The ALJ does not need to enumerate every piece of evidence or function used in his determination, but he must show that he considered the claimant's medical conditions in totality. *Dyer*, 395 F.3d

at 1211; *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009).  The Eleventh Circuit has held that, even when the ALJ could have been "more specific and explicit" in his findings about a claimant's "functional limitations and work-related abilities on a function-by-function basis," those findings nevertheless satisfy the requirements of SSR 96-8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007); *see also Castel*, 355 F. App'x at 263.

A GAF score may be one component of the RFC formulation in as much as it "is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015) (citation and internal quotation mark omitted).  "The GAF scale accounts for psychological, social, and occupational limitations, but not environmental or physical impairments." *Id*.  Even so, the GAF score is not essential to the RFC's accuracy and may have little or no bearing on a claimant's RFC assessment. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); *see also Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010).  Ultimately, the relevant inquiry is whether substantial evidence supports the Commissioner's finding. *Thornton*, 597 F. App'x at 613.

In this case, the ALJ found that Boice had medically determinable impairments that could reasonably cause some of her alleged symptoms.  But he also

13

found that the objective evidence confirmed a history of some pain but did not show that these symptoms support a more restrictive RFC finding. R. 24–31.  In arriving at this conclusion, the ALJ assessed all of the relevant evidence of Boice's ability to do work-related activities and thoroughly addressed Dr. McDonald's opinion. R. 19–31.  As the ALJ noted, Dr. McDonald's own examination revealed that Boice was normal overall, was well groomed, presented normally mentally, and had a fair prognosis. R. 26–27 & 1492–93.  Dr. McDonald also noted Boice's independence and ability to care for her daughter, herself, and her household chores. R. 1493.  Only after considering all of this evidence did the ALJ conclude that Dr. McDonald's opinions "that the claimant is mildly impaired in her ability to understand, carryout, and remember short simple instructions and to seek and accept appropriately instructions and criticism from supervisors is somewhat consistent with the overall record" and that "his opinion that the claimant's ability to maintain a regular schedule is seriously impaired is not persuasive or consistent with the record that shows the claimant can independently care for her daughter and manage her finances." R. 28.  Considering the entire medical record, the court concludes that substantial evidence supports the ALJ's findings.

The ALJ also addressed Dr. Bailey's and Dr. Estock's parallel opinions. R. 28–29.  He noted portions of their evaluations that were inconsistent with the medical record and found their conclusions to be indefinite and imprecise. R. 28–

14

29.  He emphasized that many of the terms incorporated into their opinions were not

defined by the Dictionary of Occupational Titles or the Social Security Regulations.

R. 29.  While Boice argues that this is not a proper justification for rejecting these

opinions, a disagreement with the ALJ's emphasis on terminology is not enough to

warrant reversal when it is solely the ALJ's responsibility to assess these opinions.

*See Moore*, 649 F. App'x at 945.  The court can reverse a decision only if it was not

supported by substantial evidence or if the proper legal standards were not applied.

*See Carnes*, 936 F.2d at 1218.  Here, the ALJ explained that Dr. Bailey's and Dr.

Estock's opinions conflicted with other portions of the medical record and employed

vague and conclusory language. R. 28–29.  His line-by-line exegesis of their written

opinions confirms his diligence in considering the record evidence.

Furthermore, although Boice complains that the ALJ did not explain the value

of a GAF score in determining Boice's limitations, the ALJ was not required to do

so. *See Thornton*, 597 F. App'x at 613 (citing *Howard v. Comm'r of Soc. Sec.*, 276

F.3d 235, 241 (6th Cir. 2002) ("As the Sixth Circuit has observed, GAF scores may

be helpful in formulating a claimant's RFC, but are not essential to the RFC's

accuracy, and an ALJ's failure to describe GAF scores does not render the ALJ's

RFC assessment inaccurate.").  Even so, the ALJ did state that he "mostly agree[d]

with [Dr. McDonald's GAF] assessment," but the score itself "is not persuasive, as

a GAF assessment only reflects an individual's functioning on that particular day"

and "paints a rather broad picture that is somewhat less definitive with respect to particular aspects of work functioning." R. 28.  In the end, the ALJ sufficiently addressed and evaluated the GAF score, and the law does not require any further articulation of his analysis.

Finally, the record reflects that Boice engaged in a somewhat normal level of daily activity.  Boice cared for her daughter, prepared daily meals, cleaned her home, drove herself, and shopped in stores and online. R. 282–85.  She also paid her bills, managed her finances, tended to her own basic self-care, and could live independently. R. 285 & 1492.  These activities further undermine her claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding that the ALJ properly found subjective complaints inconsistent with a record of simple daily activities).

For all of these reasons, substantial evidence supports the ALJ's decision, and Boice's arguments about her RFC assessment and GAF score fail.

## B.    Supportability and Consistency Factors

Boice also argues that the ALJ failed to consider the supportability and consistency of Dr. McDonald's, Dr. Lary's, Dr. Bailey's, and Dr. Estock's opinions. Doc. 20 at 11–13 & 17–26.  The Commissioner responds that Boice did not identify material inconsistencies between the ALJ's finding and Dr. McDonald's opinion, and properly evaluated Dr. Lary's, Dr. Bailey's, and Dr. Estock's opinions. Doc. 21

at 11 & 17–19.  The court agrees with the Commissioner.

On January 18, 2017, the Social Security Administration published final rules titled "Revision to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Reg. 5844).  Because these final rules were effective when Boice applied for benefits, the new rules govern her claim.  Under 20 C.F.R. § 404.1520c(a), the ALJ need not give any specific evidentiary weight to medical opinions, including those from the claimant's own medical sources.

The ALJ may consider the following factors in reviewing a doctor's opinion: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c).  The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). And while the ALJ must explain how he considered supportability and consistency in his decision, he need not explain how he considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2).  The ALJ is not required to articulate how he considers each medical opinion or prior administrative medical finding; the application of each factor to all the medical evidence is sufficient. 20 C.F.R. § 404.1520c(b)(1).

Here, substantial evidence supports the ALJ's evaluation of Dr. McDonald's, Dr. Lary's, Dr. Bailey's, and Dr. Estock's medical opinion.  In his opinion, the ALJ described their findings in detail and explained his criticisms of their conclusions.

R. 26–28.  For example, the ALJ explained that Dr. McDonald's opinion was not supported by his own evaluation, as referenced above.  In his assessment, Dr. McDonald found that Boice was normal overall, her prognosis was fair, and she could take care of herself, her daughter, and her household. R. 1492–93.  But Dr. McDonald nevertheless concluded that Boice's abilities were mildly and seriously impaired. R. 1493.  As to Dr. Lary's opinion, the ALJ explained that he did not estimate how long Boice could perform each task during an eight-hour workday, he only examined Boice one time, and he based his opinion on subjective complaints of pain. R. 28–29.  As the ALJ correctly noted, like Dr. McDonald, Dr. Lary's conclusions contradict his own assessment that Boice had good abdominal mobility, good hand strength, no tenderness in her abdomen, and walked and balanced normally. R. 1497–98.

Similarly, the ALJ found that the record did not support Dr. Bailey's and Dr. Estock's findings. R. 28–29.  Boice complains that the ALJ did not explain how he considered the supportability and consistency factors in his evaluation. Doc. 20 at 25.  But she is incorrect to claim that the ALJ did not consider the extent to which Dr. Bailey's and Dr. Estock's opinions conformed with other medical evidence in the record. *See* R. 28–29 (repeatedly addressing which portions of the opinions align with "the overall evidence," "the entirety of the evidence," and the "medical evidence of record").  And the ALJ explained that Dr. Bailey and Dr. Estock were

"State Agency psychological consultants" who "reviewed the evidence at the initial and reconsideration determination levels," not treating physicians. R. 28. The court fails to understand how the ALJ could have evaluated the treatment notes and other medical evidence from reviewing physicians who did not generate such records. At any rate, the ALJ incorporated portions of both Dr. Bailey's and Dr. Estock's findings into the final RFC determination, which was consistent with the record overall. As stated above, even if the court disagreed with the ALJ's approach or the evidence he highlighted, reversal would not be warranted. *See Edwards*, 937 F.2d at 584 n.3.

Ultimately, Boice asks the court to reweigh the evidence before the ALJ. But it is the court's job to review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. § 405(g)). "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The record here reflects that substantial evidence supports the ALJ's decision, so that decision cannot be overruled.

## V. CONCLUSION

Upon review of the administrative record, and considering all Boice's arguments, the court finds the Commissioner's decision is supported by substantial

evidence and based on the proper legal standards.  Accordingly, the decision is due

to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on August 17, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE